## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **VS.** | * | **DOCKET NO. 2:15-cr-69-JDL** |
| | * | |
| **ISHMAEL DOUGLAS** | * | |
| | * | |

### MOTION TO DISMISS A PORTION OF COUNT SIX

Now comes the defendant, by and through counsel, and moves this Honorable Court to dismiss so much of Count Six of the Indictment as charges that the defendant knowingly used, carried or brandished a firearm during and in relation to **a crime of violence**. The defendant so moves to dismiss because this portion of Count Six fails to state a claim. The defendant moves for dismissal for two reasons.

First, the defendant asserts that **conspiracy** to commit a Hobbs Act robbery is not a crime of violence under the law. The elements of **conspiracy** to commit robbery do not necessarily include the "use, attempted use, or threatened use, of physical force against the person or property of another" as required by 18 U. S. C. 924(c)(3)(A). Nor does conspiracy, by its nature, categorically "involve a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U. S. C. § 924(c)(3)(B).

Given the recent decision in *United States v. Samuel Johnson*, 135 S. Ct. 2551 (2015), the defendant asserts that the residual clause of § 924(c)(3)(B) is unconstitutionally vague. Consequently, an offense offered as "crime of violence" for purposes of the penalty enhancements under § 924(c) may now only qualify if it categorically satisfies the "force clause" of the definition in 18 U. S. C. § 924(c)(3)(A). In any event, **conspiracy** will not qualify under either the "force" or

"residual" clause of § 924(c)(3).

Secondly and alternatively, and for the same reasons as stated above, the Hobbs Act robbery itself that the defendant is alleged to have conspired to commit does not qualify categorically as a crime of violence under 18 U. S. C. 924(c)(3).

For both of these reasons, that portion of Count Six which alleges that the defendant used or possessed a firearm during and in relation to a **crime of violence** should be dismissed.

## THE INDICTMENT

Ishmael Douglas is charged in four counts of this seven count Indictment. The first two counts allege conspiracies involving Douglas and co-defendants Victor Lara, Jr., and Kourtney Williams, among others. Count One alleges a conspiracy to possess with intent to distribute controlled substances, namely, oxycodone. Count Two alleges a conspiracy involving all three defendants to commit a Hobbs Act violation. This count alleges that the three defendants conspired to obstruct, delay and affect commerce and the movement of articles in commerce, namely, illegal drugs and drug trafficking proceeds, by robbery. Count Six alleges that Douglas used, carried, or brandished a firearm during and in relation to a drug trafficking crime **and a crime of violence,** namely, the offenses alleged in Counts One and Two of this Indictment, all in violation of 18 U. S. C. 924(c)(1)(A)(ii).

As explained herein, the Supreme Court's recent precedent in *Johnson* renders the Government's task unachievable.  Under the current law of land, Hobbs Act robbery, as defined by 18 U.S.C. § 1951(b), categorically fails to constitute a crime of violence under § 924(c)(3)(A) (the force clause) because it can be accomplished by placing one in fear of future injury to his person or property, which 1) does not require threat of *violent physical force* and 2) does not require the

*intentional* threat of the same.  Additionally, in light of *Johnson,* the "residual clause" within §
924(c)(3)(B)*,* is unconstitutionally vague and cannot sustain a conviction.  Therefore, the specified
portion of Count Six of the Indictment must be dismissed.

### STATUTES INVOLVED

This motion primarily concerns the following two federal statutes:

1) **18 U.S.C. § 1951(b)**

Section 1951, in pertinent part, provides:

(1) The term "robbery" means the unlawful taking or obtaining of personal
property from the person or in the presence of another, against his will, by means
of actual or threatened force, or violence, or fear of injury, immediate or future, to
his person or property, or property in his custody or possession, or the person or
property of a relative or member of his family or of anyone in his company at the
time of the taking or obtaining shall [be punished in accordance with the
remainder of the statute]

2) **18 U.S.C. § 924(c)**

Section 924(c)(1)(A), in pertinent part, provides:

. . . any person who, during and in relation to a crime of violence. . . for which
the person may be prosecuted in a court of the United States, uses or carries a
firearm, shall, or who in furtherance of any such crime, possesses a firearm,
shall, in addition to the punishment provided for such crime of violence. . . . .
.

(I) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment
of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment
of not less than 10 years.

Under § 924(c)(3), "crime of violence" is defined as follows:

(3) For purposes of this subsection the term "crime of violence" means an offense

3

that is a felony and—

    (A)       has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

    (B)       that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

## ARGUMENT

**I.**    **HOBBS ACT ROBBERY UNDER § 1951(b) DOES NOT QUALIFY AS A "CRIME OF VIOLENCE" UNDER THE FORCE CLAUSE OF § 924(c)(3) BECAUSE IT CAN BE VIOLATED WITHOUT 1) THE USE, ATTEMPTED USE, OR THREATENED USE OF *VIOLENT PHYSICAL FORCE*, OR 2) AN *INTENTIONAL* THREAT OF THE SAME.**

To determine whether a predicate offense qualifies as a "crime of violence" under § 924(c), courts use the categorical approach. *See Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013); *United States v. Royal*, 731 F.3d 333, 341-42 (4th Cir. 2014); see also *United States v. Serafin*, 562 F.3d 1105, 1107-08 (10th Cir. 2009); *United States v. Acosta,* 470 F.3d 132, 135 (2d Cir. 2006). This approach requires that courts "look only to the statutory definitions – i.e., the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence." *Descamps*, 133 S. Ct. at 2283 (citation omitted); *Royal*, 731 F.3d at 341-42; *Serafin*, 562 F.3d at 1107; *Acosta*, 470 F.3d at 135.  In addition, under the categorical approach, a prior offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute – "including the most innocent conduct" –  matches or is narrower than the "crime of violence" definition. *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012).  If the most innocent conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence."

4

As a result, post-*Descamps,* for Hobbs Act robbery under § 1951(b) to qualify as a "crime of violence" under § 924(c)(3)'s force clause the offense must have an element of "physical force." And "physical force" means "*violent* force" – that is "strong physical force," which is "capable of causing physical pain or injury to another person." *Curtis Johnson v. United States,* 559 U.S. 133, 140 (2010) (emphasis in original). Hobbs Act robbery, as defined by § 1951, does not meet this requirement because it can be accomplished by putting someone in fear of future injury to his person or property, which does not require the use, attempted use, or threatened use of "violent force." Additionally, because the act of putting someone in fear of injury can accomplished without an *intentional* threat of physical force, it fails to satisfy the *intentional* mens rea required under the § 924(c)(3)(A) force clause.

> ### A.    The Act of Putting Someone In Fear of Injury Does Not Require the Use, Attempted Use, or Threatened Use of "Violent Force."

The plain language of the Hobbs Act robbery statute under 18 U.S.C. § 1951 provides that the offense can be accomplished by the act of placing another in fear of injury. This action, at best, constitutes a threat of *injury* to another, which squarely does not require the use or threatened use of "violent force." The Fourth Circuit's decision in *Torres-Miguel,* 701 F.3d 165, is directly on point. Indeed, in that case, the Fourth Circuit unequivocally held that the threat of *any physical injury,* even "serious bodily injury or death," does not necessarily require the use, attempted use, or threatened use of physical force – let alone "violent force."

In *Torres-Miguel,* at issue was the defendant's prior conviction for the California offense of willfully threatening to commit a crime which " *will result* in death or great bodily injury to another." 701 F.3d at 168 (citing Cal. Penal Code § 422(a)) (emphasis added)*.* The specific question in the case was whether the statute had an element equating to a threat of "violent force"

under the force clause of U.S.S.G. § 2L1.2 – a clause that is identical in all relevant respects to the § 924(c)(3)(A) force clause. *Id.* Despite the "death or great bodily injury" element in the California statute, the Fourth Circuit found that the offense was missing a "violent force" element, and thus, could never qualify as a "crime of violence" under the force clause. *Id.* at 168-69. The Court unequivocally held that "[a]n offense that *results* in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of crime of violence." *Id.* at 168. In strong words, the court proclaimed that "of course, a crime may *result* in death or serious injury without involving *use* of physical force." *Id.* (emphasis added).

Relying on several appellate decisions from various Circuits, the court further reasoned that there are many ways in which physical injury – even death – can result without use of "violent force." *Id.* at 168-69. "For example, as the Fifth Circuit has noted, a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force." *Torres-Miguel*, 701 F.3d at 168-69 (citing *United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010)).

In reaching its decision, the *Torres-Miguel* Court also relied on the Second Circuit's decision in *Chrzanoski v. Ashcroft*, 327 F.3d 188, 194 (2d Cir. 2003). In that case at issue was whether a prior Connecticut conviction for third degree assault qualified as a "crime of violence" under the force clause. The Connecticut statute "require[s] the state to prove that the defendant had intentionally caused physical injury." *Chrzanoski*, 327 F.3d at 193. Nonetheless, the "Second Circuit [] held that [the statute] does not constitute a crime of violence . . . because there is a difference between causation of an injury, which is all that the Connecticut statute [] required, and an injury's causation by the use of physical force." *Torres-Miguel*, 701 F.3d at 169 (citing

6

*Chrzanoski*, 327 F.3d at 194) (internal quotation marks omitted).

The Second Circuit explained that "an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission." 327 F.3d at 195. The Court elaborated that "human experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient" or someone who causes physical impairment by placing a tranquilizer in the victim's drink. *Id.* at 195-56.

For even further support, in *Torres-Miguel*, 701 F.3d at 169, the Fourth Court embraced the Tenth Circuit's decision in *United States v. Perez-Vargas*, 414 F.3d 1282, 1287 (10th Cir. 2005). In that case, the Tenth Circuit "explained that although the Colorado [third degree assault] statute required [an act causing] bodily injury [by means of a dangerous weapon], imposing that injury does not necessarily include the use or threatened use of physical force as required by the Guidelines and so the Colorado crime was not categorically a crime of violence under U.S.S.G. § 2L1.2." *Torres-Miguel*, 701 F.3d at 169 (citing *Perez-Vargas*, 414 F.3d at 1287) (internal quotation marks omitted). The Tenth Circuit reasoned that "several examples [exist] of third degree assault that would not use or threaten the use of physical force: . . . intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals." *Perez-Vargas*, 414 F.3d at 1286.

Therefore, *Torres-Miguel*, and all the other cases discussed above, clearly determine that Hobbs Act robbery, which can be accomplished by putting another in fear of physical injury, does not require "violent force." If the threat of serious bodily injury or death does not equal violent force, then certainly, threat of "physical injury" does not. Indeed, a defendant can place another in

fear of injury by threatening to *poison* that person, to expose that person to hazardous chemicals, to place a barrier in front of the person's car, to lock the person up in the car on a hot day, to lock that person at an abandoned site without food or shelter – some of the very examples that the Fourth Circuit in *Torres-Miguel* as well as the other Courts mentioned above held do not constitute "violent force."[1]

Because "the full range of conduct" covered by the Hobbs Act robbery statute does not require "violent force," it simply cannot qualify as a "crime of violence" under § 924(c)(3)'s force clause. *Torres-Miguel*, 701 F.3d at 171. And it makes no difference, even if the possibility of violating the Hobbs Act robbery statute without violent physical force is slim. Because the possibility exists, this Court cannot legally find that Hobbs Act robbery is a "crime of violence." Indeed, in *Torres-Miguel*, the Court did not cite to a single case in which an offense under the California threat statute was violated with the threat of poisoning or some other non-violent force; yet, the Fourth Circuit still found that because the elements of the offense left open the possibility that one could be prosecuted under the statute for the use of non-violent force, the prior offense categorically failed to qualify as a "crime of violence." *Id.* at 171. The Court should find the same here with respect to the Hobbs Act robbery statute, which leaves open the same possibility.

**B.  The Act of Putting Another in Fear of Injury Does Not Require an *Intentional* Threat of Violent Force Necessary under the § 924(c)(3)(A) Force Clause.**

Even more, the act of putting someone in fear of injury, as defined under the Hobbs Act robbery statute, does not constitute a "crime of violence" under the force clause because it does not

---

[1] Hobbs Act robbery can also be accomplished by placing someone if fear of injury to his property. This also does not require "violent force" against the property under § 924(c)(3)(A) because this can be accomplished by many ways short of strong physical force – threatening to throw paint on someone's house, to spill water on one's will, or to spray paint someone's car.

require an *intentional* threat of physical force.  In *Garcia v. Gonzales*, 455 F.3d 465, 468 (4th Cir. 2006), the Fourth Circuit firmly held that an offense can only constitute a "crime of violence" under the force clause if it has an element that requires an "*intentional* employment of physical force [or threat of physical force]." *Id.* (emphasis added).  The "fear of injury" element under the Hobbs Act robbery statute does not require a defendant to intentionally place another in fear of injury. Therefore, it is missing the intentional *mens rea* necessary under *Garcia*.

Federal cases interpreting the "intimidation" element in the federal bank robbery statute (18 U.S.C. § 2113(a)) are instructive here.  Federal bank robbery may be accomplished by "intimidation," which means placing someone in fear of bodily harm – the same action required under the Hobbs Act robbery statute.  *See United States v. Woodrop*, 86 F.3d 359, 364 (4th Cir. 1996) ("intimidation" under federal bank robbery statute means "an ordinary person in the [victim's position] reasonably could infer a threat of *bodily harm* from the defendant's acts."); *see also United States v. Pickar*, 616 F.2d 821, 825 (2010) (same); *United States v. Kelley*, 412 F.3d 1240, 1241 (2005) (same); *United States v. Yockel*, 320 F.3d 818, 824 (8th Cir. 2003) (same); *United States v. Higdon*, 832 F.3d 312, 315 (5th Cir. 1987) (same).

It is plain that the "intimidation" element of federal bank robbery is missing this necessary intentional *mens rea* required under *Garcia*.  "Intimidation" is satisfied under the bank robbery statute "whether or not the defendant actually intended the intimidation," as long as "an ordinary person in the [victim's] position reasonably could infer a threat of bodily harm from the defendant's acts." *Woodrup*, 86 F.3d at 36.  *See also United States v. Yockel*, 320 F.3d 818, 821 (8th Cir. 2003) (upholding bank robbery conviction even though there was no evidence that defendant intended to put teller in fear of injury: defendant did not make any sort of physical movement toward the teller

9

and never presented her with a note demanding money, never displayed a weapon of any sort, never claimed to have a weapon, and by all accounts, did not appear to possess a weapon); *United States v. Kelley*, 412 F.3d 1240, 1244 (11th Cir. 2005) ("Whether a particular act constitutes intimidation is viewed objectively, . . . and a defendant can be convicted under [federal bank robbery] even if he did not intend for an act to be intimidating."); *United States v. Foppe*, 993 F.2d 1444, 1451 (9th Cir. 1993) (same).  In other words, a defendant may be found guilty of federal bank robbery even though he did not intend to put another in fear of injury.  It is enough that the victim reasonably fears injury from the defendant's actions – whether or not the defendant actually intended to create that fear.  Due to the lack of this intent, federal bank robbery criminalizes conduct that does not require an intentional threat of physical force. Therefore, bank robbery squarely fails to qualify as a "crime of violence" under *Garcia*.  Because the federal bank robbery "intimidation" element is defined the same as the Hobbs Act robbery "fear of injury" element, it follows that Hobbs Act robbery also fails to qualify as a "crime of violence" under *Garcia*.

In sum, Hobbs Act robbery is not  a "crime of violence" under the § 924(c)(3)(A) force clause for two independent reasons.  First, the statute does not require a threat of *violent force*. Second, the statute does not require the *intentional* threat of the same.

## II.   SECTION 924(c)(3)'S RESIDUAL CLAUSE IS UNCONSTITUTIONALLY VAGUE AND THUS CANNOT SUPPORT A CONVICTION UNDER THE STATUTE.

Since Hobbs Act robbery fails to qualify as a "crime of violence" under § 924(c)(3)'s force clause, the remaining question is whether, the offense can qualify as a "crime of violence" under § 924(c)(3)'s residual clause.  It cannot under *Johnson*.  In *Johnson,* the Supreme Court decided ACCA's "residual clause" is unconstitutionally vague. *Johnson* applies to the parallel "crime of

violence" definition in § 924(c)(3)'s residual clause.  Section 924(c)(3)(B) suffers from the same flaws that compelled the Supreme Court to declare the ACCA residual clause void for vagueness. Using § 924(c)(3)(B) to categorize a predicate conviction as a "crime of violence" therefore violates due process.

> **A.    *Johnson* Expressly Overruled the "Ordinary Case" Approach to Determining Whether a Felony Qualifies as a "Crime of Violence."**

In *Johnson*, the Supreme Court held that the ACCA residual clause is unconstitutionally vague because the process by which courts categorize prior convictions as violent felonies is too "wide-ranging" and "indeterminate."  135 S. Ct. at 2557.  As a result, the ACCA "both denies fair notice to defendants and invites arbitrary enforcement by judges." *Id. Johnson* concluded that the Supreme Court's four previous attempts to articulate a workable test to determine whether a felony falls under the ACCA residual clause had failed. *Id.* at 2558-59.

The Court began its analysis by explaining that, under *Taylor v. United States*, 495 U.S. 575 (1990), the ACCA requires the categorical approach to determine whether a particular statute qualifies as a violent felony.[2] *Id.* at 2557.  Courts must assess whether a crime qualifies as a violent felony "in terms of how the law defines the offense and not in terms of how an individual might have committed it on a particular occasion." *Id.* (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)).

The Court further clarified that the residual clause "requires a court to picture the kind of conduct that the crime involves 'in the ordinary case,' and to judge whether that abstraction presents

---

[2] The Court reaffirmed the vitality of the categorical approach, despite the government's and a dissenting justice's invitation to abandon it in residual clause cases. *Id.* at 2557, 2562.

a serious risk of potential injury." *Id*. (citation omitted). The Court linked the "ordinary case"

framework to *James v. United States*, 550 U.S. 192 (2007), in which it held, "We do not view that

approach as requiring that every conceivable factual offense covered by a statute must necessarily

present a serious potential risk of injury before the offense can be deemed a violent felony. . .

Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in

the ordinary case, presents a serious potential risk of injury to another." *Id*. at 208 (citations

omitted). "As long as the offense is of a type that, by its nature, presents a serious risk of injury to

another, it satisfies the requirements of [the ACCA's] residual clause." *Id*. at 209 (emphasis added,

brackets supplied).

      *Johnson* concluded that the process of determining what is embodied in the "ordinary case"

rather than "real-world facts" is fatally flawed, rendering the ACCA unconstitutionally vague.

"Grave uncertainty" surrounds the method of "determin[ing] the risk posed by the "judicially

imagined 'ordinary case.'" 135 S. Ct. at 2557. "The residual clause offers no reliable way to choose

between . . . competing accounts of what 'ordinary' . . . involves." *Id*. at 2558 (emphasis added).

      The *Johnson* Court considered and rejected different ways that a court might envision the

hypothetical "ordinary case" since the statute offers no guidance. Specifically, the Court explained

that a statistical analysis of reported cases, surveys, expert evidence, Google, and gut instinct are all

equally unreliable in determining the "ordinary case." *Id*. at 2557 (quoting *United States v. Mayer*,

560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, J., dissenting from denial of rehearing en banc)).

Although earlier ACCA cases tried to rely on statistical analysis and "common sense," *Johnson*

concluded that these methods "failed to establish any generally applicable test that prevents the risk

comparison required by the residual clause from devolving into guesswork and intuition." *Id*. at

2559 (referring to *Chambers v. United States*, 555 U.S. 122 (2009), and *Sykes v. United States*, 564 U.S. 1 (2011)).

This flaw alone establishes the residual clause's unconstitutional vagueness. The Court, however, explained that a closely related flaw exacerbates the problem. The Court noted that the residual clause lacks a meaningful gauge for determining when the quantum of risk under the "ordinary case" of a particular statute is enough to constitute a "serious potential risk of physical injury." *Id.* at 2558. Although the level of risk required under the residual clause must be similar to the enumerated offenses (burglary, arson, extortion, or crimes involving use of explosives), *Johnson* rejected the notion that comparing a felony's "ordinary case" to the risk posed by certain enumerated offenses cures the constitutional problem. *Id.*

The enumerated offenses failed to save the ACCA residual clause because, according to the majority, comparing felonies to enumerated offenses similarly requires resorting to "a judicially imagined abstraction." *Id.* Before courts may even start the comparison, they must first determine what the "ordinary" enumerated crime entails. But the "ordinary" enumerated crimes, *Johnson* emphasized, "are far from clear in respect to the degree of risk each poses." *Id.* (quoting *Begay v. United States*, 553 U.S. 137, 143 (2008)). Any attempt to figure out the "ordinary" enumerated offense requires just as much guesswork as figuring out the "ordinary" predicate offense. The Court held that such indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary case" analysis is more than the "Due Process Clause tolerates." *Id.*

Thus, *Johnson* not only invalidated the ACCA residual clause, but it invalidated the "ordinary case" analysis and statutory provisions that compel such an analytical framework. In other words, the only way to apply the residual clause is to use the "ordinary case" analysis, and the

13

"ordinary case" analysis is impossible to apply in a constitutional manner.

**B.** *Johnson* **Means That § 924(c)(3)(B) Is Unconstitutionally Vague.**

The statutory phrase at issue in this case is essentially the same as the ACCA residual clause.[3]  To be sure, 18 U.S.C. § 924(e)(2)(B)(ii) and 18 U.S.C. § 924(c)(3)(B) are not identical,[4] but the differences have no impact on the constitutional analysis.  Although the risk at issue in the ACCA is a risk of injury, and the risk at issue in Section 924(c) is a risk that force will be used, this difference is immaterial to the due process problem and has no impact on the *Johnson* decision.[5] The

---

[3]

Courts regularly compare the similarities between the residual clause in the ACCA to the clause at issue here. (Although the comparison tends to specifically address 18 U.S.C. § 16(b), that statute is identical to § 924(c)(3)(B).) *See, e.g., Chambers*, 555 U.S. at 133, n.2 (2009) (citing circuit splits on § 16(b) in the context of a residual clause case because § 16(b) "closely resembles ACCA's residual clause") (Alito, J., concurring). *See United States v. Ayala*, 601 F.3d 256, 267 (4th Cir. 2010) (relying on an ACCA case to interpret the definition of a crime of violence under § 924(c)(3)(B)); *United States v. Aragon*, 983 F.2d 1306, 1314 (4th Cir. 1993) (same). *See also United States v. Keelan*, 786 F.3d 865, 871 n.7 (11th Cir. 2015) (describing the ACCA otherwise clause and § 16(b) "analogous"); *Roberts v. Holder*, 745 F.3d 928, 930-31 (8th Cir. 2014) (using both ACCA cases and § 16(b) cases to define the same "ordinary case" analysis); *United States v. Sanchez-Espinal*, 762 F.3d 425, 432 (5th Cir. 2014) (despite the fact that the ACCA talks of risk of injury and § 16(b) talks of risk of force, "we have previously looked to the ACCA in deciding whether offenses are crimes of violence under § 16(b)").

[4] In pertinent part, the ACCA residual clause defines a "violent felony" as  an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).  Section 924(c)(3)(B) defines a crime of violence as one that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

[5] *See Jimenez-Gonzales v. Mukasey*, 548 F.3d 557, 562 (7th Cir. 2008) (noting that, "[d]espite the slightly different definitions," the Supreme Court's respective analyses of the ACCA and § 16(b) "perfectly mirrored" each other). *See also United States v. Gomez-Leon*, 545 F.3d 777 (9th Cir. 2008); *United States v. Coronado-Cervantes*, 154 F.3d 1242, 1244 (10th Cir. 1998); *United States v. Kirk*, 111 F.3d 390, 394 (5th Cir. 1997); *United States v. Bauer*, 990 F.2d 373, 374 (8th Cir. 1993) (describing the differences between the statutes as "immaterial" and that interpreting U.S.S.G. § 4.1.1, which uses the ACCA language, "is controlled by" a decision that interprets §

Court's holding did not turn on the type of risk, but rather how a court assesses and quantifies the

risk.[6] That inquiry is the same under both the ACCA and § 924(c). Both statutes require courts first

to picture the "ordinary case" embodied by a felony[7], and then decide if it qualifies as a crime of

violence by assessing the risk posed by the "ordinary case."

Relying on *James*, the Fourth Circuit has squarely held that the "ordinary case" analysis

applies when construing 18 U.S.C. § 16(b). *United States v. Avila*, 770 F.3d 1100, 1107 (4th Cir.

2014). The Fourth Circuit stated:

> [E]very set of conceivable facts covered by first-degree burglary does not have to
> present a serious risk of injury for it to qualify as a crime of violence. It is sufficient
> if 'the conduct encompassed by the elements of the offense, in the ordinary case,
> presents a serious potential risk of injury to another.' James, 550 U.S. at 208, 127
> S.Ct. 1586. As long as an offense is of a type that, by its nature, presents a substantial

16(b)).

[6] Of course, many federal and state criminal laws include "risk" standards that employ adjectives similar to those in the ACCA and § 924(c), such as "substantial," "grave," and "unreasonable." And the Supreme Court in *Johnson* said it did not mean to call most of these into question. But, as Justice Scalia's majority opinion observed, that is because the vast majority of such statutes require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion; in other words, applying such a standard to "real-world conduct." By contrast, the ACCA's residual clause, and § 924(c)(3) too, require it to be applied to "an idealized ordinary case of the crime," an "abstract inquiry" that "offers significantly less predictability." *Johnson*, 135 S. Ct. at 2558.

[7] Both the ACCA and § 924(c)(3)(B) require courts to discern what the ordinary case of a crime is by examining the elements using a categorical approach. *See, e.g., United States v. Butler*, 496 Fed. Appx. 158, 161 n.4 (3d Cir. 2012); *Evans v. Zych*, 644 F.3d 447, 453 (6th Cir. 2011); *United States v. Serafin*, 562 F.3d 1104, 1108 (10th Cir. 2009); *United States v. Green*, 521 F.3d 929, 932 (8th Cir. 2008); *United States v. Acosta*, 470 F.3d 132, 134 (2d Cir. 2006). *United States v. Amparo*, 68 F.3d 1222, 1225 (9th Cir. 1995). Courts may not consider the factual means of committing any given offense, but must consider the nature of the offense in the "ordinary case," regardless of whether the ACCA, § 924(c)(3)(B), or § 16(b) is at issue.

risk that physical force against the person or property of another may be used, it satisfies the requirements of 18 U.S.C. § 16(b).

*Id.*

*Avila* controls here because § 16(b) and § 924(c)(3)(B) are identical.[8]  Indeed, in litigating *Johnson*, the government, through the Solicitor General, agreed that the phrases at issue in *Johnson* and here pose the same problem. In noting that the definitions of a crime of violence in both § 924(c)(3)(B) and § 16(b) are identical, the Solicitor General stated:

> Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's central objection to the residual clause: Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.

*Johnson v. United States*, S. Ct. No. 13-7120, Supplemental Brief of Respondent United States at 22-23 (available at 2015 WL 1284964 at *22-*23).  The Solicitor General was right. Section 924(c)(3)(B) and the ACCA are essentially the same and contain the same flaws. This Court should hold the government to that concession.

 Section 924(c)(3)(B), like the ACCA residual clause, thus requires the "ordinary case" analysis to assess the risk involved in a predicate offense, and how risky that ordinary case is. *Avila*, 770 F.3d at 1107; *Ayala*, 601 F.3d at 267; *Van Don Nguyen*, 571 F.3d at 530; *Sanchez-Garcia*, 501

---

[8] Other courts likewise require the ordinary case analysis when the statutory language of § 16(b) (and thus § 924(c)(3)(B)) is at issue. *See, e.g., Keelan*, 786 F.3d at 871 (relied on by the government in its Rule 28(j) letter and following the "uniform rule" of "all other circuits to have examined the issue" and adopting "ordinary case" analysis for § 16(b)); *United States v. Ramos-Medina*, 706 F.3d 932, 938 (9th Cir. 2012) (citing *James* as the source of the "ordinary case" analysis required by § 16(b)); *Van Don Nguyen v. Holder*, 571 F.3d 524, 530 (6th Cir. 2009) (considering § 16(b) and concluding that "[t]he proper inquiry is one that contemplates the risk associated with the proscribed conduct in the mainstream of prosecutions brought under the statute."); *United States v. Sanchez-Garcia*, 501 F.3d 1208, 1213 (10th Cir. 2007) (same).

F.3d at 1213. Since this is the identical analytical step that brought down the ACCA residual clause, § 924(c)(3)(B) cannot survive constitutional scrutiny under the due process principles reaffirmed in *Johnson*. As a consequence, the residual clause cannot be used to support a conviction under § 924(c).

### III.   CONSPIRACY WILL NOT QUALIFY AS A "CRIME OF VIOLENCE" UNDER THE "FORCE CLAUSE" OF § 924(c)(3)(A)

This argument relies upon the previously asserted position that the *Johnson* decision renders § 924(c)(3)(B) unconstitutionally vague. If that position is sustained, then a conspiracy may only support a § 924(c)(1)(A) charge if that conspiracy itself qualifies categorically as a crime of violence under the remaining portion of the definition – the "force clause" of § 924(c)(3)(A). It now seems quite obvious that conspiracy can no longer qualify as a "crime of violence" under § 924(c)(3) because a conspiracy need not have "as an element the use, attempted use, or threatened use of physical force against the person or property of another."

Prior to the *Johnson* decision, there was a circuit split over whether a conspiracy qualified as a crime of violence under the residual clause of § 924(c)(3)(B).[9] It is noteworthy that those cases

---

[9]*See United States v. Chandler*, 743 F.3d 648, 661-61 (9th Cir. 2014) (At least five circuits have held that conspiracy may qualify as a violent felony. See United States v. Gore, 636 F.3d 728, 738 (5th Cir.2011) ("An agreement to commit aggravated robbery presents a serious potential risk of injury.... This is particularly true when an overt act in furtherance of the agreement is performed. We need not consider whether an agreement without such an overt act would suffice for purposes of the ACCA."); United States v. White, 571 F.3d 365, 372 (4th Cir.2009) ("[T]he essential conduct underlying the Conspiracy Offense is categorically violent. The Conspiracy Offense cannot be divorced from its violent objective—robbery with a deadly weapon."); United States v. Boaz, 558 F.3d 800, 807 (8th Cir.2009) ("The § 924(e) analysis of a prior conspiracy conviction is governed by the substantive offense that was the object of the conspiracy...."); United States v. Hawkins, 139 F.3d 29, 34 (1st Cir.1998) (holding that conspiracy to commit armed robbery is a violent felony under the ACCA because "[w]e have also unequivocally held that conspiracy to commit a crime of violence ... is itself a crime of violence"); United States v. Preston, 910 F.2d 81, 87 (3d Cir.1990) ("Since [the defendant] was convicted of conspiracy to

17

to find conspiracy to be a crime of violence looked to the underlying crime that was the object of the conspiracy. Using the risk analysis associated with the residual clause, these cases found that a substantial risk that physical force would be used against the person or property of another may be used in the course of committing the offense. Those two circuits to find that a conspiracy was not a crime of violence looked only to the elements of the conspiracy itself to determine whether the offense created the substantial risk required under the residual clause. None of the reported cases discovered by counsel attempted to justify a conspiracy as a crime of violence under the force clause.        The residual clause analysis does not, under the language of the statute itself, restrict the court's view to the elements of conspiracy. However, the categorical analysis the Supreme Court has mandated would suggest that the determination whether an underlying 924(c)(1)(A) offense is a crime of violence does limit the court's view to the elements of the conspiracy. Those courts to have found a conspiracy to be a crime of violence appear to have taken the liberty of considering

---

commit a violent felony, the use or threat of physical force was a part of his prior conviction for this crime.").
By contrast, at least two circuits have held that conspiracy does not qualify as a violent felony. See United States v. Whitson, 597 F.3d 1218, 1222 (11th Cir.2010) (per curiam) ("Conspiring to commit a crime is a purposeful act.... But in South Carolina, the 'gravamen of conspiracy is an agreement or combination. An overt act in furtherance of the conspiracy is not necessary to prove the crime.' ") (internal citation omitted) (reaffirmed and applied in *662 United States v. Lee, 631 F.3d 1343, 1349 (11th Cir.2011)); United States v. Fell, 511 F.3d 1035, 1039–41 (10th Cir.2007) (holding that a Colorado conviction for conspiracy to commit second-degree burglary was not a violent felony because "[a]lthough there is an overt act element, the act need not be directed toward the entry of a building or structure.... [M]any overt acts sufficient to sustain a Colorado conspiracy conviction create no risk of a violent confrontation between the defendant and an individual interacting with the conspirator while the overt act is being committed."); United States v. King, 979 F.2d 801, 804 (10th Cir.1992) (explaining that the Tenth Circuit "look[s] only to the elements of the conspiracy crime" and holding that conspiracy to commit robbery does "not necessarily present circumstances which created the high risk of violent confrontation inherent in a completed [armed robbery]" (alteration in original) (quotation marks and citation omitted)).

the nature of the crime that was the object of the conspiracy to inform their risk analysis. This liberty is certainly not contemplated under the force clause. The language of that clause states that the offense under consideration must have "**as an element**" the use, attempted use, or threatened use of physical force. No broader risk analysis is allowed, the element must be present in the offense itself. Even those conspiracies that require proof of an overt act allow innocuous, non-violent acts to suffice. There is no necessity that the overt act be one that meets the requirements of the force clause to have a completed conspiracy.

In this case, the Indictment has specifically alleged that the underlying offense supporting the § 924(c)(1)(A) charge is the conspiracy to commit a Hobbs Act robbery charged in Count Two. The conspiracy offense alleged in Count Two simply will not support a § 924(c)(1)(A) prosecution because it does not necessarily have "as an element, the use, attempted use, or threatened use of physical force against the person or property of another."

## CONCLUSION

Since Hobbs Act robbery under § 1951 categorically fails to qualify as a "crime of violence" under § 924(c)'s "force" clause, and § 924(c)'s residual clause is unconstitutionally vague, no legal basis exists for a § 924(c) conviction.

For the foregoing reasons, the defendant respectfully requests that the Court grant this Motion and dismiss that portion of Count Six that charges the defendant knowingly used, carried or brandished a firearm during and in relation to **a crime of violence**.

Dated: August 24, 2015          _/s/ J. Hilary Billings_____
                                        J. Hilary Billings, Esq
                                        Assistant Federal Public Defender
                                        Counsel for the Defendant
                                        P.O. Box 595

Portland, Me 04112-0595
207-553-7070
FAX: 553-7017
J.Hilary.Billings@fd.org

UNITED STATE DISTRICT COURT
DISTRICT OF MAINE

**CERTIFICATE OF SERVICE**

I, J. Hilary Billings, hereby certify that I have, this date, caused the within Motion to Dismiss, to be served upon Assistant United States Attorney Darcie McElwee, Esq., by forwarding a copy of this Motion to her electronically via the court's ECF system.

/s/ J. Hilary Billings
J. Hilary Billings, Esq.
Counsel for the Defendant

Dated: August 24, 2015

20